Filed 6/26/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JOSEPH ESHAGIAN, | B340941 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. |
| v. | 22VEUD02771 [Super. Ct. App. Div. No. |
| MANUEL CEPEDA, | 23APLC001479]) |
| Defendant and Appellant. | |

APPEAL from a judgment and an order of the Superior Court of Los Angeles County, Michael R. Amerian, Judge. Appeal dismissed; petition granted.

Basta, Eric Post and Daniel J. Bramzon for Defendant and Appellant.

Grant Shenon, David M. Almaraz and Nicholas Koo for Plaintiff and Respondent.

_____

We transferred this case from the appellate division of the superior court to decide whether a tenant can appeal a judgment for possession in an unlawful detainer proceeding if the landlord has outstanding damages claims that have not been

adjudicated.  The answer is no.  If the landlord's complaint seeks damages, the possession-only judgment is not appealable because it does not resolve all rights of the parties.

Where, as here, the tenant has defaulted on the complaint, the tenant's options are limited.  But the tenant does have recourse.  The tenant can file a petition for writ of mandate under Code of Civil Procedure section 1086,[1] which requires a showing that there is no adequate remedy in the ordinary course of law or that the petitioner would otherwise suffer irreparable injury.  Because a defaulted tenant has no right to appeal a possession-only judgment and no ability to obtain a final judgment, the tenant will be able to show there is no other adequate remedy in the ordinary course of law, entitling the tenant to a determination of the writ petition on the merits as a matter of right.

In this case, the possession-only judgment entered against the defaulted tenant, Manuel Cepeda, is not appealable.  However, given the uncertainty of the law on appealability at the time Cepeda filed his appeal, we treat the appeal as a petition for writ of mandate to avoid any further delay.  We conclude the three-day notice to pay rent or quit served by the landlord, Joseph Eshagian, pursuant to section 1161, subdivision (2) (section 1161(2)), is invalid for failure to make clear by when and how Cepeda had to pay the rent, and that Cepeda would lose possession of the premises if he did not timely cure the default.  Accordingly, Eshagian's complaint incorporating the three-day notice failed to state a cause of action for unlawful detainer.  We

---

[1]     Further undesignated statutory references are to the Code of Civil Procedure.

2

dismiss the appeal and grant the petition. We direct the trial court to vacate the judgment in favor of Eshagian and to enter a new judgment in favor of Cepeda.

## FACTUAL AND PROCEDURAL BACKGROUND

A.      *The Tenancy, Three-day Notice, and Complaint*

Eshagian leased to Cepeda a residential unit in Van Nuys (the premises). Pursuant to the lease agreement, Cepeda was required to pay $1,000 a month in rent. On December 20, 2022 Eshagian served Cepeda with a "3 Day Notice To Pay or Quit." The notice stated Cepeda owed a total of $8,000 in unpaid rent due from April 1 to November 1, 2022. The notice specified the rent was to be paid to Eshagian by check, cashier's check, or money order; it listed the address of Cepeda's unit as the "[a]ddress to where rent may be delivered"; and it stated the rent could be delivered any day of the week from 8:00 a.m. to 9:00 p.m. The notice did not specify the date on which the three-day notice commenced (simply listing "12/19/2022" on the notice to the left of Eshagian's signature with no explanation), nor did it state that Cepeda would lose possession of the premises if he did not pay the amount due by a specified date.

On December 27, 2022 Eshagian filed a verified unlawful detainer complaint alleging Cepeda did not pay the rent due. The complaint sought possession of the premises, forfeiture of the lease, unpaid rent of $8,000, holdover damages in the amount of $33.33 per day from the date of expiration of the three-day notice until the date of judgment, and reasonable attorneys' fees. The complaint attached a copy of the three-day notice and proof of service as an exhibit.

3

B.    *The Entry of Default and Possession-only Judgment and Cepeda's Motion To Vacate*

On January 9, 2023 Cepeda, representing himself, filed an answer in which he denied the allegations he had not paid the rent since April 2022, he unlawfully continued in possession of the premises, and he owed $33.33 per day for use and occupancy of the premises. Cepeda also asserted affirmative defenses, including that Eshagian breached the warranty of habitability and violated the COVID-19 Tenant Relief Act and local COVID-19-related ordinances.

In late January and early February 2023 Eshagian filed several motions to compel discovery responses.[2] On March 8, 2023 the trial court granted the motions and ordered Cepeda to respond to Eshagian's discovery requests. On March 21 Eshagian filed a motion for terminating sanctions based on Cepeda's failure to comply with the court's discovery orders. Cepeda did not file an opposition to the motion. Cepeda's attorney appeared at the hearing but did not present any argument, stating only that "[w]e have nothing to add to the court record." The court granted the motion for terminating sanctions and ordered that Cepeda's answer be stricken.[3]

On April 28, 2023, at Eshagian's request, the court clerk entered a default against Cepeda. On May 2, 2023 Eshagian filed

---

[2]    It appears from the record that Cepeda was represented by counsel as of January 27, 2023.

[3]    The trial court granted the motion pursuant to sections 2023.030, subdivision (d), 2030.290, subdivision (c), and 2031.300, subdivision (c), which authorize courts to strike pleadings as a terminating sanction for discovery violations and violations of discovery orders.

4

a request for a clerk's judgment on Judicial Council form CIV-100, checking the boxes requesting the clerk to "[e]nter clerk's judgment . . . . ¶ . . . for restitution of the premises only and issue a writ of execution on the judgment." Eshagian did not request any monetary damages. On May 3, 2023 the court clerk entered a clerk's judgment against Cepeda on Judicial Council form UD-110, checking boxes indicating the judgment was for "possession only." The area of the form reserved for the amount of damages awarded had the words "possession only" written across the section. (Boldface and capitalization omitted.)

On May 19, 2023 Cepeda filed a motion to set aside and vacate the possession-only judgment pursuant to section 663. Cepeda argued the three-day notice did not comply with section 1161(2), and therefore the complaint failed to state a cause of action. Thus, he asserted, the trial court erred in entering the default judgment.

On June 5, 2023 the trial court denied the motion to vacate, stating Cepeda should have raised the deficiencies in the three-day notice prior to entry of the possession-only judgment. Cepeda timely appealed the possession-only judgment and the order denying the motion to vacate to the appellate division of the superior court. (See § 904.2 ["An appeal of a ruling by a superior court judge or other judicial officer in a limited civil case is to the appellate division of the superior court."].)

C.      *The Appellate Division Opinion and Transfer to This Court*

Cepeda argued in the appellate division that the trial court erred in entering the judgment because the three-day notice was defective. Eshagian asserted the possession-only judgment was not appealable because Eshagian's damages claims were still pending and there was no final judgment. Cepeda urged the

5

appellate division, if the possession-only judgment was not appealable, to treat the appeal as a petition for writ of mandate.

In its September 18, 2024 published opinion, the appellate division held the possession-only judgment was appealable. The appellate division recognized that Eshagian's damages claims were still pending in the trial court, but it found "[u]nder the unique circumstances of this case, the default judgment entered by the court was a final, appealable judgment."

Turning to the merits, the appellate division concluded the three-day notice was deficient because it failed to identify when the notice period commenced, did not give the address where the rent payment should be sent (instead listing Cepeda's unit number), and did not make clear that Eshagian would demand possession of the premises if the rent was not paid within the prescribed time. Therefore, the complaint, which incorporated the three-day notice, did not state a cause of action. The appellate division reversed the judgment and dismissed the appeal from the denial of the motion to vacate.

On October 9, 2024, on our own motion, we transferred the case to this court in order to secure uniformity of decision and to settle important questions of law with respect to the appealability of a possession-only judgment entered in an unlawful detainer action. (§ 911; Cal. Rules of Court, rule 8.1002.) After the parties filed their briefs on appeal, we requested supplemental briefing addressing whether the possession-only judgment is appealable.

## DISCUSSION

A.  *Unlawful Detainer Proceedings and Standard of Review*

"Unlawful detainer is a statutory remedy whose primary feature is its expedited procedure for the recovery of possession of real property wrongfully withheld or 'detained.'" (*Superior Motels, Inc. v. Rinn Motor Hotels, Inc.* (1987) 195 Cal.App.3d 1032, 1066 (*Superior Motels*); accord, *Larson v. City and County of San Francisco* (2011) 192 Cal.App.4th 1263, 1297 ["The statutory scheme is intended and designed to provide an expeditious remedy for the recovery of possession of real property."].)  Accordingly, in an unlawful detainer proceeding, "[t]he only triable issue is the right to possession and incidental damages resulting from the unlawful detention." (*Lincoln Place Tenants Assn. v. City of Los Angeles* (2007) 155 Cal.App.4th 425, 452; accord, *Superior Motels*, at p. 1066 [court in unlawful detainer proceeding may award possession of property and incidental damages, including "arrearages of rent or 'damages' in an amount of the fair or reasonable rental value of the property for the period of time from the notice terminating the tenant's right of possession to judgment"]; see § 1174, subds. (a) & (b) [judgment for plaintiff in unlawful detainer proceeding shall award possession of the premises and "assess the damages occasioned to the plaintiff by . . . any forcible or unlawful detainer . . . and find the amount of any rent due, if the alleged unlawful detainer be after default in the payment of rent"].)

When a defendant in an unlawful detainer proceeding fails to appear or answer the complaint, section 1169 provides that "the clerk, upon written application of the plaintiff and proof of the service of summons and complaint, shall enter the default of any defendant so served, and, if requested by the plaintiff,

7

immediately shall enter judgment for restitution of the premises and shall issue a writ of execution thereon." Further, after entry of the judgment for possession, "the plaintiff may apply to the court for any other relief demanded in the complaint, including the costs, against the defendant, or defendants, or against one or more of the defendants." (*Ibid*.) If a default is entered on the complaint, the case continues as an unlawful detainer proceeding. (Civ. Code § 1952.3, subd. (c).) In non-default cases, if possession of the property has been delivered to the lessor before judgment is entered, the proceeding continues as "an ordinary civil action." (*Id.*, subd. (a).)

"'"General standards of appellate review apply to appeals . . . transferred for decision to the Courts of Appeal."'" (*People v. Disandro* (2010) 186 Cal.App.4th 593, 599.) The court of appeal "'shall have similar power to review any matter and make orders and judgments as the appellate division of the superior court would have in the case. . . .' Therefore, we review the trial court's order independently of the appellate division's opinion." (*People v. Noriega* (2004) 124 Cal.App.4th 1334, 1338-1339; see § 911.)

Where, as here, the facts are undisputed, we determine a judgment's appealability as a matter of law. (*Saffer v. JP Morgan Chase Bank* (2014) 225 Cal.App.4th 1239, 1248 ["'Where the evidence is not in dispute, a determination of subject matter jurisdiction is a legal question subject to de novo review'"]; *Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 42 [same].)

B. *The Possession-only Judgment Is Not Appealable*

"[A] reviewing court lacks jurisdiction on direct appeal in the absence of an appealable order or judgment." (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005)

8

35 Cal.4th 15, 21; accord, *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696; see *Jennings v. Marralle* (1994) 8 Cal.4th 121, 126 ["[e]xistence of an appealable judgment is a jurisdictional prerequisite to an appeal"].) "The right to appeal is wholly statutory." (*Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5 (*Dana Point*); accord, *Finance Holding Co., LLC v. Molina* (2018) 29 Cal.App.5th 663, 673.) As the Supreme Court explained in *Dana Point*, section 904.1 (pertaining to general civil appeals) "lists appealable judgments and orders. Chief among them is a 'judgment' that is not interlocutory, e.g., a final judgment. A judgment is the final determination of the rights of the parties [citation] ""when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined.""" (*Dana Point*, at p. 5, fn. omitted; accord, *Finance Holding Co.*, at p. 674.) The same is true for appeals in limited civil cases under section 904.2.[4]

""""It is not the form of the decree but the substance and effect of the adjudication which is determinative. As a general test, which must be adapted to the particular circumstances of the individual case, it may be said that *where no issue is left for*

---

[4] Section 904.2 governs appeals in limited civil cases, including unlawful detainer proceedings. (See § 86, former subd. (a)(4) [providing in 2022, when this case was filed, that limited civil cases include "[a] proceeding in forcible entry or forcible or unlawful detainer where the whole amount of damages claimed is twenty-five thousand dollars ($25,000) or less" (since then increased to $35,000)]; see also former § 85.) Like section 904.1, section 904.2 lists appealable judgments and orders and states an appeal may be taken "[f]rom a judgment, except . . . an interlocutory judgment." (§ 904.2, subd. (a).)

*future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final*, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory.""" (*Dana Point, supra*, 51 Cal.4th at p. 5.)

No published cases have addressed the appealability of a possession-only judgment entered after a tenant's default in an unlawful detainer proceeding in which the complaint sought damages in addition to possession.  Eshagian relies on *Superior Motels, supra*, 195 Cal.App.3d at page 1047 and *First Western Development Corp. v. Superior Court* (1989) 212 Cal.App.3d 860, 863 (*First Western*) to support his contention that a possession-only judgment in an unlawful detainer proceeding is interlocutory and not appealable.  Although we agree with Eshagian that possession-only judgments are not appealable, the cited cases are not persuasive authority because the courts addressed this question only as dicta in recounting the history of the cases.

In *Superior Motels*, the lessee of a commercial property (Superior) filed an unlawful detainer action against various entities that had sublet the premises.  (*Superior Motels, supra*, 195 Cal.App.3d at pp. 1041-1044.)  Following a court trial, the trial court entered "an interlocutory judgment declaring Superior's right to possession" and ordered the defendants to provide an accounting of accrued rents and profits during the relevant time frame.  (*Id.* at p. 1047.)  The court then held an evidentiary hearing on accounting issues and entered a final judgment awarding damages to Superior.  (*Ibid.*)  Multiple appeals from the judgment ensued.  There was no question that

10

the final judgment was appealable; however, the Court of Appeal in a footnote recounted that the defendants previously purported to appeal from the interlocutory judgment awarding possession, but "[d]ue to the lack of an appealable final judgment [citations], those appeals were dismissed." (*Id.* at p. 1047, fn. 8.)

Eshagian's reliance on *First Western* is likewise misplaced. That case involved whether real party in interest Albert Andrisani was a vexatious litigant with respect to his filing of multiple lawsuits against First Western seeking damages arising out of an earlier unlawful detainer action. (*First Western, supra*, 212 Cal.App.3d at pp. 862-863.) In recounting the procedural history of the case, the Court of Appeal noted that Andrisani had previously appealed the order in the unlawful detainer proceeding awarding possession of the subject property to First Western, and the court in an unpublished opinion had "treated the purported appeal from a nonappealable interlocutory order as a petition for writ of mandate." (*Id.* at p. 863.)

In determining whether a possession-only judgment is an appealable judgment, we follow the guiding principles set forth in *Dana Point, supra*, 51 Cal.4th 1. As discussed, the relevant inquiry is whether there is any issue left for future consideration by the court other than compliance with the possession-only judgment. (*Id.* at p. 5.) Eshagian's complaint sought unpaid rent and holdover damages in addition to possession of the property. Despite entry of the possession-only judgment, the complaint has not been dismissed, and Eshagian's damages claims are still pending. Further, section 1169 provides that the plaintiff in an unlawful detainer action may seek damages after a defendant defaults and the superior court enters a possession-only judgment. In addition, Civil Code section 1952.3, subdivision (c),

11

specifies that after the defendant defaults, "[t]he case shall proceed as an unlawful detainer proceeding," as long as the complaint has not been amended or set aside, even if possession is no longer at issue. (See Civ. Code, § 1952.3, subds. (a) & (c).) The plain language of these code sections makes clear that an unlawful detainer proceeding continues following the defendant's default if the plaintiff seeks damages, even after possession has been restored to the plaintiff. Accordingly, we cannot say the judgment "'"'terminates the litigation between the parties and leaves nothing to be done but to enforce by execution what has been determined.'"'" (*Dana Point*, at p. 5.)

Cepeda's alternative contention that the possession-only judgment was appealable under the collateral order exception to the one-final-judgment rule fares no better. In some circumstances, "[c]ourts have also treated collateral orders as appealable, holding that "'[w]here the trial court's ruling on a collateral issue 'is substantially the same as a final judgment in an independent proceeding' [citation], in that it leaves the court no further action to take on 'a matter which . . . is severable from the general subject of the litigation' [citation], an appeal will lie from that collateral order even though other matters in the case remain to be determined.'"'" (*Curtis v. Superior Court* (2021) 62 Cal.App.5th 453, 464 (*Curtis*); accord, *In re Marriage of Grimes & Mou* (2020) 45 Cal.App.5th 406, 418.)

Cepeda argues the award of damages "is not a 'necessary step' to determine the issue of possession and is, therefore, collateral," citing *Park v. Law Offices of Tracey Buck-Walsh* (2021) 73 Cal.App.5th 179, 188 (trial court order requiring plaintiff to pay third party Department of Justice for production of electronically stored documents was appealable because it was

"collateral to the subject matter of the main litigation," was final as to the collateral matter, and required payment of money). But the question here is whether the possession-only judgment is appealable as a collateral order, not whether the damages award would be appealable. In any event, the determination of possession was not ""'distinct and severable from the general subject of the litigation'""—the determination of the parties' rights under the lease. (*In re Marriage of Grimes & Mou, supra*, 45 Cal.App.5th at p. 419.)

Cases addressing the appealability of interim judgments in bifurcated trials are instructive. Courts have consistently held that interlocutory orders following the first phase of a trial, even if fashioned as a judgment, are not appealable. For example, in *Baker v. Castaldi* (2015) 235 Cal.App.4th 218, the trial court bifurcated trial of the plaintiff's claims for stealing antiques into two phases—the first to address liability, compensatory damages, and whether punitive damages were warranted, and the second to determine the amount of punitive damages. At the conclusion of the first phase, the trial court entered a "judgment" in favor of the plaintiff that awarded compensatory damages and found punitive damages were warranted in an amount to be assessed in a "separate trial." (*Id.* at p. 221) The defendants purported to appeal from the judgment, but the Court of Appeal dismissed the appeal, reasoning, "[I]t seems quite clear that the . . . 'judgment' was interlocutory. While a final judgment leaves no issue left for future consideration except compliance [citation], the . . . 'judgment' did leave open an issue for future consideration: the amount of punitive damages. Determining the amount of punitive damages at a court trial seems quite clearly to be a type of "'judicial action on the part of the court'" that is "'essential to a

13

final determination of the rights of the parties. . . .'"'"' (*Id.* at p. 223; see *Walton v. Magno* (1994) 25 Cal.App.4th 1237, 1240 ["when a trial is bifurcated and first proceeds on the issue of liability, no appeal is allowed until both the liability and damage phases of the trial have been completed"].)

In both *Baker* and *Walton*, despite the fact that liability had been determined, the unresolved damages claims rendered the judgment interlocutory. The same is true here, where even though the primary objective of the proceeding to recover possession has been resolved, the outstanding damages claims remain to be adjudicated. Thus, the possession-only judgment is not appealable.

C.      *Cepeda Could Have Challenged the Possession-only Judgment by Filing a Petition for Writ of Mandate*

We are sympathetic to Cepeda's argument that if a possession-only judgment is not appealable, a tenant in default will have no recourse to challenge the judgment if the landlord does not pursue a claim for damages alleged in the complaint. But a defaulted tenant in this situation—who seeks review of a possession-only judgment in the absence of a final judgment on a landlord's damages claims—may obtain review of the judgment by filing a petition for writ of mandate. (See § 1086 [writ of mandate "must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law"]; *Interinsurance Exchange of the Automobile Club v. Superior Court* (2007) 148 Cal.App.4th 1218, 1225 ["To obtain writ review, a petitioner generally must show his or her remedy in the ordinary course of law is inadequate or that petitioner would suffer irreparable injury were the writ not granted."].)

14

A defaulted tenant will generally be able to show there is no adequate remedy at law to challenge a possession-only judgment (in addition to a likely showing of irreparable harm if the tenant is facing eviction).  That is because "a party who is in default is barred from further participation in the proceedings," including raising a challenge at the default prove-up hearing. (*Siry Investment, L.P. v. Farkhondehpour* (2022) 13 Cal.5th 333, 343 (*Siry*); accord, *Rios v. Singh* (2021) 65 Cal.App.5th 871, 887 [where defendant had not shown that default was improperly entered, "[t]he entry of default bars [defendant] from advancing contentions on the merits"]; *Steven M. Garber & Associates v. Eskandarian* (2007) 150 Cal.App.4th 813, 823 ["Procedurally, the entry of a default . . . cuts off the right [of a defendant] to file pleadings and motions, and the right to notices and the service of pleadings."].)

Thus, a defaulted tenant has no ability to appear in the trial court to request the setting of a trial date on a landlord's damages claims.  It would be unfair to allow a landlord to obtain a possession-only judgment and shield the judgment from review by never requesting a determination of the landlord's damages claims.[5]

---

[5] Where the landlord prevails after a trial, the judgment would typically award possession and damages (if sought), affording the tenant an immediate appeal.  If a possession-only judgment is entered, a non-defaulted tenant may request the trial court expeditiously set a trial date on the damages claims, which would move the proceeding to a final appealable judgment. In this case Eshagian sought damages in his complaint but did not pursue a judgment awarding damages.

15

Moreover, most remedies available to a defendant to challenge entry of a default judgment in the trial court are not available to a tenant in an unlawful detainer action because the challenged possession-only judgment is not a final judgment. For example, a defaulted defendant generally may challenge entry of the default judgment based on the sufficiency of the complaint by filing a motion to vacate a nonjury "judgment or decree" under section 663, subdivision (1), where there is an "[i]ncorrect or erroneous legal basis for the decision."[6] However, as the Supreme Court in *Ryan v. Rosenfeld* (2017) 3 Cal.5th 124, 127 explained, section 663 "allows an aggrieved party in a civil case to move the trial court to vacate its *final* judgment." (Italics added.) In clarifying that the denial of a motion to vacate a judgment under section 663 is an appealable order, the court in *Ryan* explained that those orders "fit [the] description" of orders appealable under section 904.1, subdivision (a)(2), which allows an appeal of "'an order made after a[n appealable] judgment.'" (*Ryan*, at p. 127.) Because a possession-only judgment is not an appealable judgment, a motion to vacate a possession-only

---

[6] Section 663 provides with respect to a nonjury judgment, "A judgment or decree, when based upon a decision by the court, . . . may, upon motion of the party aggrieved, be set aside and vacated by the same court, and another and different judgment entered, for [a cause] materially affecting the substantial rights of the party and entitling the party to a different judgment: [¶] 1. Incorrect or erroneous legal basis for the decision, not consistent with or not supported by the facts; and in such case when the judgment is set aside, the statement of decision shall be amended and corrected . . . ."

16

judgment under section 663 is not available to a defaulted tenant.[7]

A defaulted defendant alternatively may generally file a motion under section 657, subdivision (7), for a new trial (treating the default prove-up hearing as the "trial") "on the ground that the trial court committed errors in law when awarding and calculating damages." (*Siry, supra*, 13 Cal.5th at pp. 345-345, 367.) Section 657, subdivision (7), may be used to challenge the sufficiency of the complaint (and an incorporated three-day notice)[8] because even where a default has been entered, the "'plaintiff still bears the burden of *proving* its entitlement to damages to the court.'" (*Siry*, at p. 343.) Thus, the court "remains obligated to ensure that a plaintiff has established entitlement to damages under "(1) the relevant statute, contract, or legal doctrine, and (2) the well-[pleaded] allegations in its operative complaint." (*Ibid*.) However, where the court enters only a possession-only judgment, the defaulted tenant cannot challenge the judgment under section 657 because the judgment does not resolve the landlord's damages claim.

---

[7]     Because the possession-only judgment is not appealable, the trial court's order denying Cepeda's motion to set aside the judgment pursuant to section 663 is likewise not appealable. We therefore dismiss that portion of Cepeda's appeal.

[8]     Section 1166, subdivision (d)(1)(A), requires that the complaint in an unlawful detainer action regarding residential property attach "[a] copy of the notice or notices of termination served on the defendant upon which the complaint is based," here, the three-day notice. The landlord must also attach a "copy of any written lease or rental agreement regarding the premises." (*Id.*, subd. (d)(1)(B).)

17

Nor can a tenant in default, if properly served, file a motion to set aside a "void judgment or order" under section 473, subdivision (d), to challenge a possession-only judgment. "Long-standing Supreme Court precedent dictates that 'a judgment is not void if the court has jurisdiction of the parties and of the subject matter, irrespective of whether or not the complaint states a cause of action so long as it apprises the defendant of the nature of the plaintiff's demand.'" (*First American Title Ins. Co. v. Banerjee* (2022) 87 Cal.App.5th 37, 44, quoting *Christerson v. French* (1919) 180 Cal. 523, 525.) "[E]ntering a default judgment based on a complaint that apprises a defendant of the nature of the plaintiff's demand but does not adequately state a cause of action is an act in excess of jurisdiction that renders a judgment voidable rather than void." (*First American Title Ins. Co.,* at p. 44.)[9]

Accordingly, unless the judgment can be challenged as void, a defaulting defendant has no recourse in the trial court.

[9] A defaulted defendant may also seek to challenge the entry of default on certain procedural grounds. Within six months of the default, the defendant may file a motion to vacate the default under section 473, subdivision (b), based on the party's or attorney's "mistake, inadvertence, surprise, or excusable neglect." (See *Steven M. Garber & Associates v. Eskandarian, supra,* 150 Cal.App.4th at p. 824 [defaulted defendant's remedy "was a motion under Code of Civil Procedure section 473 to set aside the default"].) Alternatively, section 473.5 authorizes a defendant to move to set aside a default based on lack of actual notice of the action. Neither remedy will assist Cepeda because the default was entered after the answer was stricken as a terminating sanction. Other tenants may likewise suffer a default without meeting the requirements of section 473, subdivision (b), or section 473.5.

However, in an appeal from the default judgment, the tenant can argue that the unlawful detainer complaint failed to state a cause of action because it did not attach a valid notice to quit.  (See *Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 282 ["On appeal from the default judgment, '[a]n objection that the complaint failed to state facts sufficient to constitute a cause of action may be considered.'"]; see also *City of Alameda v. Sheehan* (2024) 105 Cal.App.5th 68, 75 (*Sheehan*) [service of a valid three-day notice to pay rent or quit is a prerequisite to an action for unlawful detainer].)  But as discussed, a possession-only judgment is not appealable where the landlord's claims for damages have not been resolved.  Therefore, the only avenue of relief available to a tenant in this situation is to file a petition for writ of mandate in the appellate division of the superior court (or in the court of appeal for an unlimited civil case).

Cepeda at oral argument expressed his concern that a petition for a writ of mandate is not an effective remedy because review of writ petitions is discretionary and writ petitions are rarely granted.  Cepeda is correct that most petitions for writ of mandate are denied.  (See *Omaha Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1266, 1271 ["Approximately 90 percent of petitions seeking extraordinary relief are denied."].)  However, as the Supreme Court explained in *Powers v. City of Richmond* (1995) 10 Cal.4th 85, 113 (*Powers*), the argument that appellate review by filing an extraordinary writ petition "is inherently less effective than a remedy by direct appeal because issuance of the extraordinary writs is discretionary whereas direct appeal guarantees a decision on the merits . . . betrays a serious misunderstanding of the discretionary character of extraordinary writs."

19

Section 1086, which governs writ petitions, has discretionary and mandatory components. As discussed, section 1086 provides a writ of mandate "*must* be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." (Italics added.) Thus, the reviewing court first determines whether a plain, speedy, and adequate remedy is available to the petitioner. If the petitioner has a right to appeal, the inquiry into whether that remedy is adequate is discretionary: "The discretionary aspect of writ review comes into play primarily when the petitioner has another remedy by appeal and the issue is whether the alternative remedy is adequate." (*Powers, supra*, 10 Cal.4th at p. 113; accord, *People v. Mena* (2012) 54 Cal.4th 146, 153.) But if the court finds no other plain, speedy, and adequate remedy in the ordinary course of law, the court "must" issue the writ.

As the *Powers* court explained, "When an extraordinary writ proceeding is the only avenue of appellate review, a reviewing court's discretion is quite restricted . . . . '"[W]here one has a substantial right to protect or enforce, and this may be accomplished by such a writ, and there is no other plain, speedy and adequate remedy in the ordinary course of law, he [or she] is entitled as a matter of right to the writ, or perhaps more correctly, in other words, it would be an abuse of discretion to refuse it."'" (*Powers, supra*, 10 Cal.4th at p. 114; accord, *J&A Mash & Barrel, LLC v. Superior Court of Fresno County* (2022) 74 Cal.App.5th 1, 17 [because orders regarding expungement of lis pendens may be reviewed only by filing a writ of mandate, "[t]his court's ordinary authority to rely on discretionary reasons to decline review is therefore constrained"].)

In *Powers*, the Supreme court considered whether Government Code section 6259, subdivision (c), violated the California Constitution's clause granting courts of appeal appellate jurisdiction (except following a judgment of death) by limiting appellate review of a superior court's decision under the Public Records Act (Gov. Code, § 6250 et seq.) to the filing of a petition for an extraordinary writ. (*Powers, supra*, 10 Cal.4th at pp. 89-90.) In concluding section 6259, subdivision (c), provided effective relief and thus passed constitutional muster, the court explained, "[W]hen writ review is the exclusive means of appellate review of a final order or judgment, an appellate court may not deny an apparently meritorious writ petition, timely presented in a formally and procedurally sufficient manner, merely because, for example, the petition presents no important issue of law or because the court considers the case less worthy of its attention than other matters." (*Powers*, at p. 114; see *Leone v. Medical Bd. of Cal.* (2000) 22 Cal.4th 660, 663-664, 669 [provision limiting review of physician discipline matters to filing of writ petition does not violate appellate jurisdiction clause of California Constitution because there was no basis to infer from frequency of summary denials of writ petitions "that extraordinary writ review is not a sufficient or effective appellate remedy in physician discipline proceedings"].)

Because a tenant in default cannot challenge the adequacy of the three-day notice by appealing the possession-only judgment, the only remedy available to the tenant is to file a petition for a writ of mandate. Thus, upon the filing of an adequately pleaded petition for writ of mandate in the appellate division challenging a possession-only judgment, the appellate division *must* reach the merits of the petition, and if the petition

21

shows the tenant is entitled to relief, the court must issue the writ because there is no plain, speedy, and adequate remedy in the ordinary course of law, and therefore the tenant "is entitled as a matter of right to the writ." (*Powers, supra*, 10 Cal.4th at p. 114; see *Leone v. Medical Board, supra*, 22 Cal.4th at pp. 669-670 [when a writ petition constitutes the exclusive means of obtaining appellate review of an order, "an appellate court must judge the petition on its procedural and substantive merits"].)

In this case, at the time Cepeda filed his notice of appeal on June 8, 2023, the Los Angeles County Sheriff's Department had served Cepeda with a writ of execution and five-day notice to vacate the premises, with a June 8 scheduled lockout date. Cepeda requested the trial court stay the writ of possession until the court could hear his section 663 motion to vacate, but the court denied his request. Because the possession-only judgment was not immediately appealable, there was no adequate remedy at law. Moreover, if Cepeda filed his petition before he was locked out, he could have made a showing of irreparable harm (and requested a stay pending resolution of the petition). Regardless of whether he faced an imminent lockout, Cepeda could have made a showing that he did not have an adequate remedy in the ordinary course of law because there was no scheduled trial on damages, and thus no final judgment from which he could appeal.

D. *We Treat Cepeda's Purported Appeal as a Petition for Writ of Mandate*

Cepeda urges us to exercise our discretion to consider his appeal as a petition for writ of mandate because at the time he appealed there was a lack of clarity as to whether the possession-only judgment was an appealable order. Further, he argues, he

22

lost his home notwithstanding Eshagian's failure to comply with the three-day notice requirements, and for us to deny review would "make it so landlords are the only parties who . . . may obtain summary relief despite not complying with the conditions for such relief, and can deprive the opposing party of judicial review by not seeking or waiving damages that are ancillary to the action." We agree that there must be a path for tenants to expeditiously challenge a possession-only judgment given the high stakes—the tenant's ability to remain in the premises. And Cepeda is correct that the limitations on an appeal are one-sided—the landlord has the ability promptly to appeal a judgment for the tenant because a final judgment will be entered if the tenant prevails on the unlawful detainer complaint. The ability of a tenant to file a petition for writ of mandate evens out the playing field, but given the posture of this case, we must decide whether to treat Cepeda's purported appeal as a petition for writ of mandate. Under the unusual circumstances here, we grant Cepeda's request to do so.

As we explained in *Curtis, supra*, 62 Cal.App.5th at pages 465 to 466, the Supreme Court in *Olson v. Cory* (1983) 35 Cal.3d 390, 401 (*Olson*) "considered five factors in holding it was appropriate to treat the appeal as a petition for a writ: Whether '(1) requiring the parties to wait for a final judgment might lead to unnecessary trial proceedings; (2) the briefs and record included, in substance, the necessary elements for a proceeding for a writ of mandate; (3) there was no indication the trial court would appear as a party in a writ proceeding; (4) the appealability of the order was not clear; and (5) the parties urged the court to decide the issues rather than dismiss the appeal.'" Applying these factors, the court in *Olson* concluded there were

23

"unusual circumstances" to treat the appeal as a petition for writ of mandate because "the issue of appealability was far from clear in advance"; the issues were thoroughly briefed and argued; and "[t]o dismiss the appeal rather than exercising [the court's] power to reach the merits through a mandate proceeding would . . . be "'unnecessarily dilatory and circuitous.'"" (*Olson*, at p. 401.)

Three of the five *Olson* factors are present here. At the time Cepeda filed his appeal, it was not clear whether a possession-only judgment was appealable. Indeed, the appellate division concluded the judgment was appealable, a decision we now reverse. In addition, this matter is fully briefed; the record is sufficient for a writ of mandate proceeding; and there is no indication the trial court would elect to appear in a writ proceeding. There is therefore no reason to require Cepeda to file a writ petition and have the parties brief the same issues, further delaying resolution of Cepeda's challenge to the three-day notice and whether Eshagian had a right to possession. (See *Last v. Superior Court* (2023) 94 Cal.App.5th 30, 44 [treating appeal from temporary support order as petition for writ of mandate where the matter was full briefed and argued, the record was sufficient for a writ proceeding, there was no indication the trial court would appear as a party, and "judicial economy would not be served by deferring resolution of the issues presented until rendition of an appealable judgment or order"]; *Curtis, supra*, 62 Cal.App.5th at p. 467 [where appeal was fully briefed, the record supported a writ proceeding, and there was no indication the trial court would appear, "[i]t would serve no purpose at this point to require Curtis to file a writ petition and have the parties submit the identical briefing on the petition"]; *Summers v. Superior Court* (2018) 24 Cal.App.5th 138, 142 [treating

purported appeal from order for sale of property in pending partition action as petition for writ of mandate because there was "uncertainty about [the] order's appealability" and the issue to be decided was a "pure question of law"].)

The Supreme Court's decision in *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 732, 746 is instructive. There, the court held the judgment considered by the Court of Appeal was not an appealable order because it did not resolve all of the plaintiff's causes of action, but the Supreme Court treated the appeal as a petition for writ of mandate (and reversed the Court of Appeal's decision), explaining, "Judicial economy would not be served in this case by deferring resolution of the issues decided by the Court of Appeal until final judgment on all of plaintiffs' causes of action. The merits of those issues not only have been briefed by the parties and decided by the Court of Appeal, but also have been thoughtfully addressed by a diverse group of amici curiae."

We therefore treat Cepeda's appeal as a petition for writ of mandate.

E.     *The Three-day Notice Failed To Comply with Section 1161(2)*

"The Unlawful Detainer Act [(§§ 1159-1179a)] governs the procedure for landlords and tenants to resolve disputes about who has the right to possess real property. [Citations.] Given the need for quick, peaceful resolutions of unlawful detainer actions, the statutory procedures must be strictly adhered to, including the stringent requirements for service, notice, and filing deadlines." (*Stancil v. Superior Court* (2021) 11 Cal.5th 381, 394-395; accord, *Dr. Leevil, LLC v. Westlake Health Care Center* (2018) 6 Cal.5th 474, 480 ["'The statutory requirements in

25

[unlawful detainer proceedings "'must be followed strictly.'""]; *Sheehan, supra*, 105 Cal.App.5th at p. 75.)

"Section 1161(2) provides that a tenant is guilty of unlawful detainer when the tenant continues in possession of a rental property without the permission of the landlord after default in the payment of rent." (*Sheehan, supra*, 105 Cal.App.5th at p. 75.) When the tenant continues in possession, "service of a 'valid three-day notice to pay rent or quit is a prerequisite to an unlawful detainer action.'" (*Ibid*; accord, *Bevill v. Zoura* (1994) 27 Cal.App.4th 694, 697.) "The notice's purpose is to inform the tenant of the breach so the tenant can rationally choose whether to cure the breach and retain possession, quit the property, or contest the allegations." (*Lee v. Kotyluk* (2021) 59 Cal.App.5th 719, 731.)

Section 1161(2) requires that the three-day-notice be in writing, state the amount of rent due, and include specified information regarding how the rent may be paid.[10] "'[B]ecause of

---

[10] Section 1161(2) provides the three-day notice must specify one of three options for payment: (1) payment to an individual, stating "the name, telephone number, and address of the person to whom the rent payment shall be made, and, if payment may be made personally, the usual days and hours that person will be available to receive the payment"; (2) payment to a financial institution, stating "the number of an account in a financial institution into which the rental payment may be made, and the name and street address of the institution (provided that the institution is located within five miles of the rental property)"; or (3) "if an electronic funds transfer procedure has been previously established, . . . payment may be made pursuant to that procedure."

the summary nature of an unlawful detainer action, a notice is valid only if the lessor strictly complies with the statutorily mandated notice requirements.'" (*Sheehan, supra*, 105 Cal.App.5th at pp. 81-82 [three-day-notice was defective because it "[did] not provide the correct spelling or complete name of the corporation to whom rent should be paid"]; accord, *Bevill v. Zoura, supra,* 27 Cal.App.4th at p. 697 [three-day-notice was defective because it stated amount of rent in excess of what was due].) "The Legislature added these informational requirements to avoid confusion and 'protect both landlords and tenants alike, by setting forth clear rules for payment to whom and where.' (Assem. Com. on Housing and Community Development, Analysis of Sen. Bill No. 985 (2001-2002 Reg. Sess.) as amended July 9, 2001, p. 7.)" (*Sheehan*, at p. 75; accord, *Foster v. Williams* (2014) 229 Cal.App.4th Supp. 9, 16.)

In addition to requiring specific information regarding how rent is to be paid, the notice "must be framed in the alternative, viz., pay the rent or quit, . . . . '[The statute] clearly requires that a notice first be given to the delinquent tenant . . . that in the event of the failure of the tenant to make payment of delinquent rent . . . the plaintiff will exercise his right under the law to regain possession of the premises.'" (*Hinman v. Wagnon* (1959) 172 Cal.App.2d 24, 27-28; accord, *Horton-Howard v. Payton*

---

Section 1161(2) further provides as to payment to an individual that "if the address does not allow for personal delivery, then it shall be conclusively presumed that upon the mailing of any rent or notice to the owner by the tenant to the name and address provided, the notice or rent is deemed received by the owner on the date posted, if the tenant can show proof of mailing to the name and address provided by the owner."

(1919) 44 Cal.App. 108, 112 [notice to quit must "clearly, positively, and unequivocally disclose the intention of the landlord to repossess the premises"]; *Delta Imports, Inc v. Municipal Court* (1983) 146 Cal.App.3d 1033, 1036 ["Where the condition or covenant allegedly violated is capable of being performed, the notice must give the tenant the alternative of performing or quitting possession."].)

Finally, a landlord cannot prevail in an unlawful detainer proceeding unless the three-day-notice was properly served and the tenant has not paid the rent due within the three-day period.[11] (*Borsuk v. Appellate Division of Superior Court* (2015) 242 Cal.App.4th 607, 611 ["'[p]roper service on the lessee of a valid three-day notice to pay rent or quit is an essential prerequisite to a judgment declaring a lessor's right to possession" under § 1161(2)]; *Downing v. Cutting Packing Co.* (1920) 183 Cal. 91, 95-96 [forfeiture "does not take place until there has been a failure to pay the rent during the 3 days allowed by the statute"].) Pursuant to section 1161(2), the computation of the three-day notice period excludes weekends and judicial holidays.

If the landlord does not strictly comply with the requirements for a three-day notice, the landlord cannot prevail in an unlawful detainer action, and instead, "''a landlord's remedy is an ordinary suit for breach of contract with all the delays that remedy normally involves and without restitution of

---

[11] Section 1162, subdivision (a), provides that a three-day-notice may be served on a residential tenant by: (1) personal service; (2) leaving the notice with an adult at the residence and mailing the notice; or (3) by affixing the notice in a conspicuous place on the property and sending a copy by mail.

the demised property.""" (*WDT-Winchester v. Nilsson* (1994) 27 Cal.App.4th 516, 526; accord, *Bevill v. Zoura, supra,* 27 Cal.App.4th at p. 697.)

The three-day notice in this case was deficient in three respects.  First, the notice was titled, "3 Day Notice To Pay Or Quit," but it did not state that Eshagian would repossess the premises if Cepeda did not pay rent prior to expiration of the three-day notice period.  The mere use of the words "pay or quit" in the title of the document was insufficient to "clearly, positively, and unequivocally" place Cepeda on notice that he was facing imminent eviction.  (*Horton-Howard v. Payton, supra,* 44 Cal.App. at p. 112; accord, *Hinman v. Wagnon, supra,* 172 Cal.App.2d at pp. 27-28.)

Second, the notice did not state when the notice period commenced or ended, nor did it inform Cepeda that the three-day period excluded weekends and judicial holidays.  The notice appears to have provided the date it was signed by Eshagian but not when the notice was served, which commenced the three-day period.  We observe, for example, that the notice is dated December 19, 2022, but the complaint alleged the notice was served "[o]n or about December 20, 2022."  Absent this information, an ordinary tenant would not have reasonably understood the deadline by which the tenant needed to pay the rent due to avoid forfeiture of the premises.

Third, the notice was deficient because it did not provide a clear address where rent could be paid, as required by section 1161(2).  The address listed on the notice was the leased premises where Cepeda lived.  By directing Cepeda to deliver the rent to Eshagian at the unit where Cepeda lived, and specifying that the rent could be delivered to Eshagian between 8:00 a.m.

29

and 9:00 p.m. (when presumably Eshagian would not be in the rental unit), the notice did not meet the Legislature's stated purpose "to avoid confusion and 'protect both landlords and tenants alike, by setting forth clear rules for payment to whom and where.'" (*Sheehan, supra*, 105 Cal.App.5th at p. 75.)

Because the three-day notice failed to strictly comply with section 1161(2), Eshagian failed to state a cause of action for unlawful detainer, and the possession-only judgment must be reversed. (See *Kim v. Westmoore Partners, Inc., supra*, 201 Cal.App.4th at p. 282 ["if the well-pleaded allegations of the complaint do not state any proper cause of action, the default judgment in the plaintiff's favor cannot stand"]; *Sheehan, supra*, 105 Cal.App.5th at p. 75 ["service of a 'valid three-day notice to pay rent or quit is a prerequisite to an unlawful detainer action'"].)

## DISPOSITION

Cepeda's appeal from the possession-only judgment and order denying the motion to vacate the judgment is dismissed. We deem the appeal from the judgment a petition for writ of mandate and grant the petition. We direct the trial court to vacate the possession-only judgment in favor of Eshagian and to enter a new judgment in favor of Cepeda. Cepeda is to recover his costs in the appeal to the appellate division and in this proceeding.

FEUER, J.

We concur:


SEGAL, Acting P. J.          STONE, J.

30